IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

**KEVIN LINN**  **PLAINTIFF**
**ADC #119571**

v.  No: 5:17-cv-00038 JM-PSH

**JEREMY ANDREWS,** *et al.*  **DEFENDANTS**

**PROPOSED FINDINGS AND RECOMMENDATION**

**INSTRUCTIONS**

The following Recommendation has been sent to United States District Judge James M. Moody Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

**DISPOSITION**

**I. Introduction**

Plaintiff Kevin Linn filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 while incarcerated at Arkansas Department of Correction's (ADC) Wrightsville Unit (Doc. No. 2). He has since been released. *See* Doc. No. 79. Linn alleges his due process and first amendment rights were violated. Doc. No. 2. The defendants are Ray Hobbs, former director of the ADC; ADC disciplinary hearing officer administrator Raymond Naylor; and four ADC employees working at the Varner Unit: deputy warden Jeremy Andrews, chief security officer Michael Bolden, disciplinary hearing officer Keith Waddle, and warden Randy Watson. *Id.* Linn's claims against

defendants in their official capacities were previously dismissed as were his injunctive relief claims. *See* Doc. Nos. 4, 6, 102 & 104.

Defendants filed a motion for summary judgment, a brief in support, and a statement of undisputed facts (Doc. Nos. 110-112). Linn filed a response, declaration, and statement of disputed material facts (Doc. Nos. 122-124). Defendants filed a reply (Doc. No. 125). The defendants' statement of facts, and the other pleadings and exhibits in the record, establish that the material facts are not in dispute and that defendants are entitled to judgment as a matter of law.

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". FED. R. CIV. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse

party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. Undisputed Facts

The undisputed facts listed below were submitted by defendants and are supported by the following documents attached to defendants' statement of undisputed facts: the Affidavit of Jeremy Andrews (Doc. No. 112-1); the Affidavit of Ray Hobbs (Doc. No. 112-2); Administrative Directive 13-10 (Doc. No. 112-3 at 2-36); the February 5, 2014 letter written by Linn (Doc. No. 112-3 at 37); External Movements sheet for Linn (Doc. No. 112-3 at 38); and Linn's February 2014 disciplinary documentation (Doc. No. 112-3 at 39-46). Although Linn filed a response and statement of disputed facts, he did not refute the facts provided by defendants or challenge the admissibility of the supporting documents except to generally assert that defendants retaliated against him, denied him a fair and impartial hearing, and violated clearly established law. *See* Doc. No. 124.

 1. On February 5, 2014, Linn wrote the following letter to then ADC Director Hobbs:

 Mr. Hobbs,

 I need you to have me moved off of the South Hall of Varner unit ~~before~~ to prevent bloody violence that is ~~likely~~ highly likely to occur between myself and a few inmates from neighboring two-barracks who have been harassing me and making threats towards me while in the South Hall Dining area and the South Hall showers. Even today (02/04/14), officer Clorid was working One and Two Barracks and witnessed inmate Jones out of two-barracks coming out of the South Showers as I was heading towards the showers and Jones began making threats and opened the showers doors back up and tell

>other inmates from 2-barracks that I was coming to the showers and to "get" me when I come in. Then another time a 2-barracks inmate turned on the water-hose hydrant to spray across the showers room directly on me, then began threatening to fight me when I said something to him about it, I refuse to accept anymore of this trouble and I am giving you an opportunity to take preventative action. Please respond.
>
>                                                /s/ K. Linn

*Id.* at 3; Doc. No. 2 at 9.

  2. On February 28, 2014, Jeremy Andrews received the letter from Hobbs. Doc. No. 112-1 at 1. The letter was forwarded to Andrews because Linn was housed at the Varner Unit at that time. *Id.*

  3. Andrews and Hobbs believed Linn's letter threatened violence based on the following two statements written by Linn: "I need you to have me moved off of the South Hall of Varner unit before to prevent bloody violence that is likely highly likely to occur between myself and a few inmates from neighboring two-barracks who have been harassing me and making threats towards me while in the South Hall Dining area and the South Hall showers"; and "I refuse to accept anymore of this trouble and I am giving you an opportunity to take preventative action." *Id.* at 1-2; Doc. No. 112-2 at 1.

  4. Because of these statements, Andrews filed disciplinary charges against Linn. Doc. No. 112-1 at 2.

  5. Prior to and at the time that Linn wrote the letter to Director Hobbs, Administrative Directive "AD" 13-10 titled "Disciplinary Rules and Regulations" was in force. Doc. No. 112-3 at 2-36.

  6. Linn was charged with violating disciplinary rules 05-2, Written Threats of Bodily Harm; 05-3, Assault-Verbal or written threat; and 12-1, Failure to obey verbal and/or written orders of staff. *Id.* at 39.

7. Rule 05-2 in AD 13-10 makes "written threats of bodily harm or death to another person(s)" a Class A penalty. *Id.* at 8.

8. Rule 05-3 of AD 13-10 prohibits an inmate from "any willful attempt or threat(s) to inflict injury upon the person of another." *Id.*

9. Rule 12-1 of AD 13-10 makes "failure to obey verbal and/or written orders of staff" a Class A penalty. *Id.* at 10.

10. AD 13-10 requires that when an officer charges an inmate with a disciplinary violation, the officer must complete a disciplinary form and provide the form and any attachments to the chief security officer. *Id.* at 15.

11. The chief security officer is then required to review the documents and must take one of four actions, including forwarding the disciplinary to the disciplinary hearing officer for a hearing. *Id.* at 14.

12. The hearing should occur within seven days unless an extension is authorized. *Id.* at 16.

13. An inmate must be given notice at least twenty-four hours in advance of his or her disciplinary hearing. *Id.* at 15.

14. At the hearing, the inmate should be informed of the charges pending, has a chance to plead guilty or not guilty, and may present a defense. *Id.* at 17.

15. The hearing officer must weigh the evidence before making a decision of guilt or innocence. *Id.*

16. Andrews completed a disciplinary form related to the violations charged against Linn, and he submitted the form and a copy of the letter Linn mailed to Hobbs to Bolden, the chief security officer. *Id.* at 39.

17. Bolden reviewed the disciplinary form on March 4, 2014, and approved the charges. *Id*.

18. On March 5, 2014, Linn was notified of the disciplinary charges. *Id.*

19. On March 9, 2014, Linn was transferred from the Varner Unit to the Pulaski County Jail for a court appearance. *Id.* at 38.

22. Linn returned to the Varner Unit on March 12, 2014. *Id.*

23. On March 18, 2014, a disciplinary hearing was held on Linn's disciplinary charges. *Id.* at 40.

24. Keith Waddle was the Hearing Disciplinary Officer who presided over Linn's hearing. *Id*.

25. Linn pleaded not guilty to each of the charges, and he was allowed to give a statement in his defense. *Id.* Linn's statement was as follows:

> I think the director or his secretary should have written the disciplinary. I have been charged with to [sic] many rules. The disciplinary has expired. This was written because of a grievance. I did not threaten to harm anyone. This was written with assumption.

*Id.*

26. Waddle found Linn guilty of the charges. *Id.* The disciplinary report indicates that Waddle considered the following evidence:

> Witness statement reviewed.
> Inmate sent a letter to staff and threaten harm.
>
> FI states on the pm of 2-28-14, Linn disobeyed an order by sending a letter to staff and threatening harm to staff in the letter.
> Copy of letter.
>
> FI report is accepted.

*Id.* at 40-41.

27. As his penalty, Linn was given 60 days of restrictions on commissary, phone, and visitation, and he was ordered to serve 30 days in punitive isolation. *Id*. at 40.

28. Linn appealed his disciplinary conviction to defendant Watson, a warden, who upheld Linn's disciplinary conviction. *Id.* at 41.

29. Linn then appealed to Hearing Administrator Naylor, who also affirmed Linn's disciplinary conviction. *Id*.

### IV. Analysis

Defendants assert they are entitled to qualified immunity with respect to Linn's individual capacity claims. Qualified immunity protects government officials from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity is a question of law and is appropriately resolved on summary judgment. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). To determine whether a defendant is entitled to qualified immunity, the Court must consider two questions: (1) do the facts alleged by plaintiff establish a violation of a constitutional or statutory right; and (2) if so, was that right clearly established at the time of the defendant's alleged misconduct. *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015). Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

*Retaliation*

Linn alleges that Andrews filed the February 2014 disciplinary in retaliation for a grievance Linn wrote naming Andrews. Doc. No. 2 at 9. Linn contends defendant Bolden reviewed the disciplinary report and referred it to the disciplinary hearing officer despite insufficient evidence

to support the charges. *Id.*  Linn further alleges that Bolden has "adopted liability" of Andrews' retaliatory acts because he failed to correct the wrong by signing off on Andrews' disciplinary report against Linn. *Id.* at 13.  Linn also alleges that defendants Watson, Naylor, and Hobbs failed to correct Andrews' retaliation by "ignoring the record of the [disciplinary] proceedings, ignoring the facts stated in [Linn's] respective appeals to them, and by allowing the hearing officer's decision and assessed punishment to stand despite the lack of supporting evidence and the many procedural violations and errors committed by the hearing officer during the hearing." *Id.* at 13-14.

      To succeed on a § 1983 retaliation claim, a plaintiff must prove that he engaged in protected activity and that defendants, to retaliate for the protected activity, took adverse action against the plaintiff that would chill a person of ordinary firmness from engaging in that activity. *See Lewis v. Jacks*, 486 F.3d 1025, 1028–29 (8th Cir. 2007) (citing *Revels v. Vincenz,* 382 F.3d 870, 876 (8th Cir. 2004)).  The plaintiff must also provide affirmative evidence of a retaliatory motive. *See Haynes v. Stephenson,* 588 F.3d 1152, 1157 (8th Cir. 2009); *see also Wilson*, 441 F.3d at 592 ("[Plaintiff's] belief that [defendant] acted from a retaliatory motive is insufficient.").  The Eighth Circuit Court of Appeals has held that "if the discipline which the prisoner claims to have been retaliatory was in fact imposed for an actual violation of prisoner rules or regulations, then the prisoner's claim that the discipline was retaliatory in nature must fail." *Goff v. Burton*, 7 F.3d 734, 738 (8th Cir. 1993).  *See also Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir.1994) (prison disciplinary committee's finding, based on corrections officer's description of events, that prisoner actually violated prison regulations essentially "checkmate[d]" prisoner's retaliation claim), cert. denied, 515 U.S. 1145 (1995).  The United States Supreme Court has held that in prison discipline

8

cases, the requirements of due process are satisfied if "some evidence" supports the decision by the prison disciplinary board. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).

Linn's retaliation claims fail as a matter of law because the disciplinary report shows that there was some evidence to support the disciplinary Linn alleges was retaliatory. The report states that the hearing officer considered a witness statement and a copy of the letter sent by Linn. Additionally, Linn has not come forward with any evidence to prove Andrews acted with a retaliatory motive. Accordingly, the retaliation claims Linn asserts based on the February 28, 2014 disciplinary charges should be dismissed with prejudice.

*Due Process*

Linn also claims that his due process rights were violated by Bolden, Waddle, Watson, Naylor, and Hobbs during the February 2014 disciplinary proceedings. Specifically, Linn claims that Bolden should not have referred the disciplinary charges to the disciplinary hearing officer; that Waddle denied his request to see the letter to Hobbs; that Waddle was biased and wrongly decided the disciplinary charges; that Waddle failed to consider the facts and evidence; that Waddle pre-determined Linn's guilt and convicted him of the charges; and that Watson, Naylor, and Hobbs failed to fairly decide his appeal of the disciplinary charges and the housing decision.

A prisoner may maintain a due process challenge to a prison disciplinary proceeding if he is deemed to have a liberty interest at stake. *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Phillips v. Norris,* 320 F.3d 844, 847 (8th Cir. 2003). An inmate has no liberty interest in avoiding segregated confinement, as long as the conditions do not amount to an "atypical and significant" hardship that would give rise to due process protection as set forth in *Sandin v. Conner*, 515 U.S. 472, 483-484 (1995). The Eighth Circuit Court of Appeals has "consistently held that administrative and disciplinary segregation are not atypical and significant hardships under

9

*Sandin.*" *Portly-El v. Brill*, 288 F.3d 1063, 1065 (8th Cir. 2002). Linn alleges that he suffered an atypical and significant hardship while housed in "maximum security segregation." *See* Doc. No. 2 at 14. Neither party has produced evidence concerning the conditions in segregation. Accordingly, the Court assumes, but does not decide, that Linn had a liberty interest at stake in the conditions he endured while in segregation.

To meet the requirements of due process for a prison disciplinary hearing, an "inmate must receive: (1) advance written notice of the disciplinary charge, (2) an opportunity to call witnesses and present documentary evidence in his defense, and (3) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985). Additionally, the requirements of due process are satisfied if some evidence supports the disciplinary decision. *See id.* at 455. "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *See id.* at 455-456.

The disciplinary report in this case shows that Linn was afforded due process. He was notified of the charges, provided an opportunity to present a defense,[1] and Waddle provided a statement as to why he was convicted. *See* Doc. No. 112-3 at 39-41. Additionally, the disciplinary decision is supported by some evidence – specifically, the letter Linn admits he wrote. Although Linn's letter could have been construed as a request for protection instead of a threat to other

---

[1] Linn has not alleged he requested to call witnesses or provide documentary evidence. He complains that he was not allowed to see a copy of the letter he wrote. *See* Doc. No. 2 at 10. However, he has not disputed the authenticity of the letter provided by defendants in support of their motion for summary judgment.

inmates or staff, the decision makers interpreted the letter as a threat to others. Accordingly, Linn's due process claims fail as a matter of law and should be dismissed with prejudice.

## IV. Conclusion

Because Linn fails to establish a constitutional violation, the defendants are entitled to qualified immunity as to Linn's individual capacity claims. The undersigned recommends that defendants' motion for summary judgment (Doc. No. 110) be granted, and this case be dismissed with prejudice.

DATED this 6th day of May, 2019.

_____
UNITED STATES MAGISTRATE JUDGE